# M'Dermott's Appeal.

The refusal by a foreigner who arrives and becomes domiciled here, to receive his wife who follows him hither, is a virtual turning her out of doors, and the Court of Common Pleas may decree her alimony.

LIBEL for divorce by Ann M'Dermott, late Ann Lynch, by her next friend, Francis Dimond, against John M'Dermott, in 'the Common Pleas of *Montgomery* county, in which a decree was made in favour of the libellant, and the respondent appealed.

The following libel was filed on the 19th August 1843:

The petition of Ann M'Dermott, late Ann Lynch, by her next friend Francis Dimond, respectfully shows, that your libellant, on the 23d November 1831, was bound in holy matrimony, and married to a certain John M'Dermott, late of the parish of Knockbride, in the county of Cavan, Ireland, now of the borough of Norristown, in the said county of Montgomery; and from that day until the first day of June 1834, lived and cohabited with the said John M'Dermott, in the said county of Cavan, Ireland, as his wife, and as such was owned and acknowledged by him, and so deemed and reputed by their neighbours and acquaintances. During this period of two years and a half they lived very affectionately together, and had one child (a boy) born unto them, and who is still living, as this libellant believes. At the said last-mentioned period, to wit, about the first of June in the year last aforesaid, the said John M'Dermott took leave of the said Anne his wife and of his child (they being then domiciled in the county of Cavan, in Ireland aforesaid), in order to emigrate, as he said, to the United States of America, he promising at his departure to either send for or return to them, his said wife and child, in the course of a year from the said time of his departure. He then, to wit, in June of the said year 1834, departed from his native land and emigrated to the United States of America, leaving his said wife and child domiciled in the said county of Cavan, in Ireland. During a space of four years immediately succeeding the aforesaid time of his departure from his wife and native land, he continued to send many proofs of affection and remembrance to his said wife through the medium of a relative of his who lived near his said wife, and with whom he corresponded by letter. But from and after the expiration of the said space of four years these proofs of his kind remembrance began to be very rare, and in a short time entirely ceased to be afforded to his said wife. Nevertheless your unhappy libellant could not then be persuaded that her husband, the said John M'Dermott, had yet entirely alienated his affections from her the said libellant, and endeavoured to believe that he had not yet

wholly abandoned her and his said child to the mercies of the world. She, your said libellant, therefore continued by her industry to support herself and the said child, in the hope and trust that her husband, the said John M'Dermott, would yet have compassion on his wife, the said libellant, and his child aforesaid, and would either return to or send for them, and relieve them from their pressing loneliness and abandonment; until the spring of the year 1842, when she received the most cruel proof that a woman can receive, that she the said libellant was indeed wholly and utterly abandoned by her said husband, the said John M'Dermott. It was then that, pressed by the evils of her poor and lonely condition, and abandoned by him who had bound himself to be her protector by the most sacred of human laws, and under the most solemn sanction of religion, she, your libellant, resolved to leave her country and her kindred, and to go to that part of the United States of America where she understood her said husband, the said John M'Dermott, resided, and there to demand from him the restoration of his shelter and protection, or, failing his compliance, to ask for herself the protection of the laws of that country which had afforded her said husband, the said John M'Dermott, a refuge. For this purpose she, your libellant, left her native home in the month of May last past, and arrived in the borough of Norristown aforesaid on the 25th day of July last past, and took up her residence at the Railroad Hotel, kept by Mr Daniel Henkle, in the said borough, where she now resides. On the evening last mentioned of her arrival in the said borough, a messenger came to her from her said husband, the said John M'Dermott, saying that he, the said John M'Dermott, wished to see her, your said libellant; whereupon she forthwith went in company with his said messenger, and on the evening last aforesaid met her said husband, the said John M'Dermott, who immediately recognised her, the said libellant, as his wife, and received her with apparent kindness, but signified that under present circumstances it would be necessary for her, the said libellant, to take up her residence in Philadelphia, until he, the said John M'Dermott, could make his arrangements for going back with her, the said libellant, to their native country. This proposal for her to reside in Philadelphia apart from her said husband, this libellant thought proper to decline, whereupon they separated for the evening, he having conducted her to the door of her hotel aforesaid. On the next day following, your libellant met the said John M'Dermott, whereupon he reiterated to her the proposal of the preceding evening, to wit, that she should reside apart from him in Philadelphia, where he said he would provide for her, but declared that if she refused to comply with this proposal, he would not recognise her as his wife. Yet, notwithstanding this harsh usage, this libellant resolved to abstain for a few weeks from obtruding herself on her said husband's presence, or troubling him by her entreaties or reproaches, in the hope that, seeing her humi-

lity and forbearance, his conscience and better feelings might be re-awakened, and he might be induced to do her justice without her invoking the aid of the laws in this behalf. But this your libellant's last hope was suddenly dashed to the ground by the arrival of a note or letter from the said John M'Dermott, directed to her host the said Daniel Henkle, on the 27th July last past, of which the following is a copy, to wit:

Mr. Daniel Henkle—

Sir: I understand that there is a female person stopping at your house who is trying to make it known to the people of Norristown that she is my wife. I deny knowing or of ever having married such person, nor yet will I recognise any such person my wife as is described to be at your house. I notify you not to trust or harbour any such person on my account, as I will not be answerable for the same.

I am your friend respectfully,

Jn. M'Dermott.

Sir, the sooner that person is from your house, the better.

Your libellant, therefore, finding herself utterly and hopelessly abandoned by her said husband, the said John M'Dermott, in a strange land, and upon the mercy and the sympathy of strangers, charged in the presence of those strangers as a base impostor that was utterly unworthy of their sympathies, by him from whom she thought herself entitled to look for sympathy, protection and support, by all the laws of Divine and human sanction, has at length resolved to appeal to these laws. She, the said libellant, now most humbly represents to this honourable court that the said John M'Dermott, from the said 25th July 1843, hath, the said parties being at that time resident at Norristown aforesaid, wilfully and maliciously absented himself from the habitation of this libellant, and abandoned his family without just or reasonable cause, and has, from the said date, persisted in such desertion. Wherefore your libellant prays your honours that a subpœna may issue from the said court, directed to the said John M'Dermott, commanding him to appear at the next November Term of the said court to answer this petition; and also that a decree of the said court may be given, granting this libellant a divorce from bed and board, and also allowing her such alimony as the said John M'Dermott's circumstances will admit of, so as the same do not exceed the third part of the annual profit or income of his estate, or of his occupation or labour. And the said libellant as in duty bound will ever pray, &c.

A subpœna was awarded by the court, T. B., on the 19th August 1843. To this petition and subpœna the respondent, on the 24th February 1844, filed the following demurrer and answer:

VIII. — W

The said John M'Dermott, saving and reserving to himself all and all manner' of benefit of exception to the manifold errors in the said libel contained, for answer thereto, or such part thereof as he is at this time required to answer, answereth and saith, that the said petition or libel of the said libellant, and the matters therein contained, in manner and form as the same are therein stated and set forth, are not sufficient in law for the said libellant to have or maintain her aforesaid action of divorce against him, the said John M'Dermott, and that he, the said John M'Dermott, is not bound by the law of the land to answer unto the same, and this he is ready to verify.

And this respondent further saith, that the said libellant hath not resided in the State of Pennsylvania one whole year next before the presenting of her said libel, and is not a citizen thereof, nor is the same alleged or attempted to be alleged in the aforesaid libel; wherefore for want of a sufficient libel and affidavit in this behalf, the said John M'Dermott prays judgment, and that the said libellant may be barred from having or maintaining her aforesaid action of divorce against him.

And the said respondent, for further plea in this behalf, saith that each and every the allegations contained in the said libel of her the said libellant are hereby expressly traversed and denied; and of this the said respondent puts himself upon the country, &c.

On the 1st March 1844 the court on argument gave judgment for the plaintiff on the demurrer. Same day, leave was given to amend the answer and to put in oath. On the 15th April 1844 the respondent filed the following amended answer:

This defendant saving and reserving to himself all manner of benefit and advantage of exception to the manifold untruths, uncertainties and imperfections in the said libel contained, for answer thereto, or unto so much thereof as this defendant is advised is in any way material for him to answer to, answereth and saith that he cannot admit that he, this defendant, was ever lawfully bound in holy matrimony and married to the said libellant, or that they lived and cohabited together as man and wife, or that they were so deemed and reputed by their neighbours and acquaintances for the period stated in the said libel or for any other time, unless the following statement of facts, which this defendant avers, shall in law amount to such lawful marriage and cohabitation as the said libellant supposes. This defendant avers and admits that he knew the said libellant in the county of Cavan, in Ireland; that some time in the year 1831 or about that time the said libellant was living at service in the family of defendant's father, where defendant then resided, and continued so at service there for the space of about six months, when she was discharged in consequence as defendant believes, of the discovery of an illicit intercourse between said libellant and this defendant; that after her dismissal

this defendant visited her at her father's house, and some time after this defendant was at Cootehill, a market town in Ireland, some miles from home, and there met libellant with her mother and two cousins; that said libellant and her mother then told defendant that libellant was in the family-way, and that he must marry her or that bodily harm would ensue, and proposed that they should at once be married. Defendant knowing that the brothers of libellant were vicious, bullying characters, was somewhat intimidated and consented to be married. Bishop Brown was applied to to perform the ceremony, who, after inquiring into the circumstances refused to do so; parties then remained at the tavern drinking until evening. Libellant's mother proposed that libellant and defendant should that night be married, and that they would go to a priest near the road leading from said market town. Under the belief that the said libellant was enceinte by him as represented by her and the mother, and under the fear of bodily harm from the brothers of said libellant, this defendant consented, and the marriage ceremony was accordingly performed by said priest, between eleven and twelve o'clock of that night—the mother of libellant paid the priest for his services, and each of the parties retired to their respective homes. When this clandestine ceremony became known to defendant's parents, he, this defendant, was driven from home and remained away about six weeks, when through the intervention of friends a reconciliation was brought about, and defendant was again received by his parents, but on the condition that he the defendant would have no intercourse whatever with the said libellant. For the space of near two years after this, defendant continued to reside with his parents and libellant with her parents, and although defendant acknowledges that during this time he occasionally visited her, yet it was always clandestinely and without the knowledge of his, the defendant's parents or friends. The defendant then went to reside with a cousin, about fifteen miles distant, where he remained about six months; during defendant's residence at this latter place, he visited libellant twice, after which defendant came to America where he has resided ever since. The defendant further avers that the representations by the said libellant and her mother that she was enceinte by him, which was used as a means for coercing him to consent to the performance of the marriage ceremony, was fictitious and untrue, as the child was not born for near eighteen months after that time. The defendant expressly denies that he ever lived with the said libellant as man and wife, either in Ireland or elsewhere, but that their intercourse with each other before the performance of the aforesaid ceremony and the cohabitation afterwards, was as before stated. The defendant further expressly denies that he, this defendant and libellant, ever resided together at Norristown or at any other place in the United States—or that he, this defendant, ever wilfully and maliciously absented himself

[M'Dermott's Appeal.]

from the habitation of said libellant and abandoned his family. But on the contrary, that he continues to reside at Norristown, as and where he has resided for many years, and where he supports and maintains himself by his industry — and defendant further avers that he is informed and believes that the child of the said libellant was, after the departure of defendant from Ireland, taken by defendant's parents and supported by them without any charge to libellant, and that the said libellant never had her habitation with the defendant, nor the defendant with the libellant, at Norristown, as is alleged by said libellant in her petition or elsewhere. All which matters and things this defendant is ready to aver, maintain and prove, as this honourable court shall award, and therefore prays to be hence dismissed, &c.

On the 15th August 1844 the court below decreed a separation from bed and board; and that the respondent should pay to the libellant the sum of $50 on or before the 15th September following; and $20 quarterly from and after that day, for her support and maintenance, and pay also the costs of the libellant.

Errors assigned:

1. The court erred in deciding against the respondent on the demurrer.

2. The court had no jurisdiction, as the alleged cause of divorce occurred out of the State of Pennsylvania.

3. There is no evidence to sustain the application on the part of the libellant.

*Freedly* and *Mallery*, for the appellant, contended that the court below had no jurisdiction.

*Dimond* and *Tilghman*, contra.

The opinion of the Court was delivered by

GIBSON, C. J.—There is no question that the courts here have not jurisdiction of marital duties abroad; and were we required to decree alimony for desertion before the parties were domiciled in the State, we would be bound to refuse it. But the refusal of a foreigner to receive his wife, when she has followed him hither, is a virtual turning of her out of doors. Our statute is a municipal regulation for the protection of the community as well as the wife. Now whatever may be the demerits of either party as to transactions in Ireland, about which we know nothing, it is sufficient for the purposes of the present adjudication that the libellant is the lawful wife of the respondent, and that when she rejoined him here he refused to maintain her. It is proper therefore that he, and not the community, bear the burthen of her support.

Decree affirmed.