## Bishop *versus* Bishop.

In a proceeding for divorce on the ground of desertion, it is not sufficient for witnesses to testify that the respondent wilfully and maliciously deserted the libellant, in the words of the statute. Facts must be proven showing that such desertion has taken place, and that it was wilful and malicious.

The refusal of a wife to accompany her husband to a foreign country, is not, in itself, a wilful and malicious desertion, within the meaning of the act.

Our courts have no jurisdiction to decree a divorce, on the ground of desertion, where the marriage and alleged desertion took place in a foreign country, and the defendant never was within the jurisdiction.

The Act of 26th April 1850, giving jurisdiction on the ground of desertion, where the parties at the time of the occurrence were domiciled *in any other state*, applies only to parties who were so domiciled in some other of the United States.

APPEAL from the Common Pleas of *Philadelphia*.

This was a libel for divorce from the bonds of matrimony, by Thomas Bishop against Charlotte Bishop. The proceedings were regular, but *ex parte*, the defendant never having been within the jurisdiction of the court. The libel set forth that the parties were married on the 4th January 1841, and that on the 4th July 1849, the defendant wilfully and maliciously deserted and absented herself from the habitation of the libellant, without any just or reasonable cause, and still persisted therein.

The only witness examined was *Georgiana Denman*, who testified as follows :—

"1. I know both libellant and respondent; the former all my life, the latter about sixteen years; he is my brother, and I became acquainted with her at the time of their marriage. They resided together in England till the year 1849, when libellant came to America.

"2. I was not present at their marriage; I have seen the certificate of their marriage, and know that they have lived and cohabited together as man and wife, and been generally reputed and considered to be such. They came to reside in London, directly after their marriage; after living in London about two years, they removed to Dublin, where they remained, I think, five or six years; they removed thence to Liverpool, where the

[Bishop *v.* Bishop.]

libellant's health was so bad that he came to America; this was in 1849.

"3. I do know that the respondent has wilfully and maliciously deserted and absented herself from the habitation of the said libellant, without any reasonable cause; this she has persisted in for more than seven years, saying, she never would come to America. After libellant had been in America three years, he returned to England, and they were married; and when his health failed in Liverpool, he proposed to respondent, to come with him to America to live, but she refused to accompany him; he then proposed to her, that she should follow him, which she also refused to do—saying, she never would come to America. In the summer of 1852, he returned to England, for the purpose of bringing his family to this country, she would not come; she permitted him to bring the four oldest children, but refused to come with him and them, and retained the two youngest children; he desired to bring his whole family. He has resided in Philadelphia for the last five years, and been engaged in his profession of teaching music."

The court below refused to grant the divorce and dismissed the libel; whereupon the libellant appealed to this court.

*Page*, for the appellant.—Two doubts have been suggested by the court below; one as to whether there has been a desertion by the wife; the other as to the jurisdiction of the court, and each seems easy of solution.

A refusal to follow amounts to desertion. To be absent from the habitation of the husband against his consent, and without reasonable cause, is desertion and abandonment: Butler *v.* Butler, 1 *Pars.* 329; Vanleer *v.* Vanleer, 1 *Harris* 211; Hollister *v.* Hollister, 6 *Barr* 450; *Addison on Contracts* 709.

By the common law, the domicil of the husband is the domicil of the wife. They may have two residences for some purposes, but there can be but one domicil. The domicil of the husband draws to it that of the wife. The respondent, though being in England, is domiciled in Pennsylvania, and was so domiciled at the time she refused to live with the libellant: Hollister *v.* Hollister, 6 *Barr* 450; Dougherty *v.* Snyder, 15 *S. & R.* 84; Greene *v.* Greene, 10 *Pick.* 410.

The law of 1850 is designed to give relief in cases where the parties are not domiciled in the state at the time of the desertion. Here the libellant was domiciled in the state at the time of the occurrence complained of, and if he was so domiciled, then the respondent was domiciled here also. Her absence from it against the will of her husband is a desertion and abandonment of that domicil.

In a recent case, reported as having occurred in Cincinnati, Ohio, J. P. Kaloaza, who was Kossuth's aid-de-camp in the Hun-

garian army, obtained a divorce from his wife Kara, on the ground of wilful absence for three years. She is in Europe, never was in the United States, and refuses to join her husband in this country.

The opinion of the court was delivered by

THOMPSON, J.—This is a libel for a divorce, by Thomas Bishop, a resident of Philadelphia, against Charlotte, his wife, a resident of England, and who never has been an inhabitant of Pennsylvania, even for a temporary purpose. The complaint set forth, is for wilful and malicious desertion. . This, as a cause of judicial separation of man and wife, is by no means general. It has its origin in municipal regulation, for a breach of the mutual contract, independent of moral considerations. In England, it is not a cause of divorce, while in Scotland, it is. In Pennsylvania, it is cause, while in New York, Massachusetts, and most of the other states, it is *not*. Most countries regulate the subject by positive laws, upon that basis which conforms most nearly to the habits and tempers of its people : some, as in France and Prussia, permitting the bands of wedlock to be dissolved for a variety of causes, among which is the incompatibility of tempers ; while in others, it is considered a sacred ordinance, and entirely indissoluble. The result of this diversity of law, operating in times when the world has become migratory, beyond any former period, becomes a source of somewhat anomalous results. In England, Parliament alone has the power to grant divorces, and for the cause of adultery. Desertion, there, is not a cause of divorce. Parties marrying there, and removing to this country, are subject to our laws, and a divorce may be granted here, for the cause of complaint set forth in this case, although it was no part of the law of the contract. Suppose it to be so done, however, and either party, or both, return to England, their courts would not recognise the divorce at all, and the parties might be legally separated here, while the married state legally continued there. These incongruities may follow a divorce, unless all the parties reside within the jurisdiction of the court, so that it may fully attach.

Some writers have held it to be against the comity of nations, and a fraud upon these laws, to grant divorces, in contravention of the " *lex loci contractus ;*" and that it is so, because it induces a violation of the law of the contract, by the encouragement it holds out to persons to leave their country for the purpose of accomplishing a judicial separation. The multiplicity of questions that may arise under international laws, in cases of divorce, are of great variety and grave import, but will be postponed at this time for the more single examination of this particular case, whether, in fact and in law, it falls within our settled rules of judicial action.

1. The facts, waiving the question, for the present, whether desertion abroad is cause of divorce here, when the parties are not within our jurisdiction, and whether an act, innocent of any such consequences there, being proved here, will dissolve the bonds of matrimony, contracted there; we inquire, was there evidence in the case of wilful and malicious desertion in England? The libellant's sister was complainant's witness to establish this, and she swears: "I do know that the respondent has wilfully and maliciously deserted and absented herself from the habitation of said libellant, without any reasonable cause." This ardent witness cannot be allowed to establish such an important ingredient in the complainant's case, in this manner. He was bound, if entitled to be divorced for such a cause, to exhibit facts to the court, from which they might legally infer this breach of the libellant's obligation. He cannot withhold the facts and prove the inferences. So far as this was attempted, it furnished no support to the libellant's case.

2. Would the *facts* disclosed by the witness, justify the court in coming to a conclusion favourable to the complainant? They were:—that the parties were married in England; after a time removed to Ireland; returned again to England, and the libellant, on account of ill health, it is said, determined to emigrate to America; up to this point of time, they had lived together, and for aught we know, lived happily; he determined on going; she would not consent to go; he left her, and emigrated. Is wilful and malicious desertion a natural and necessary inference from such a state of facts? The terms imply free election, to live with or not live with the party deserted, and determined upon against the marital obligation, impelled thereto by wilfulness and malice. The choice must be free, excepting so far as it may be controlled by these evil impulses.

Can this be inferred, by any fair process of reasoning, from the facts sworn to here? The woman had for years followed the fortunes of her husband—faithful in everything, as the testimony shows, as well as his anxiety to have her accompany him to this country evinces, if he were sincere in it. At this point, however, and in the face of this great trial, she fails! The leaving home and country—the dangers of a long ocean-voyage—the privations of a stranger in a strange land, may have overmastered her strongest desire to follow his footsteps further, and determined her to cling to her native country. This is the evidence and the fair inference from it, extending to her the legal presumption of innocence and honesty, until the contrary be made to appear, and does not necessarily, and in opposition to all other inferences, establish wilful and malicious desertion. The subsequent request, in 1852, to come to America, if we regard it as proved, changes not her position, or his rights, in the least. But it would be difficult,

[Bishop *v*. Bishop.]

indeed, to rest upon the proof. The witness gives no information how she acquired her knowledge of the fact, or that she had any personal knowledge whatever. We do not, therefore, think that the facts, if no difficulties were to be encountered in point of law, would have justified the court in decreeing the divorce.

3. As to the law. But if there had been wilful and malicious desertion in England proved, our Acts of Assembly do not pretend to give jurisdiction over it as a cause of divorce here, where the complainant alone resides here. "Where desertion has taken place in any other state," the words used in the Act of 1850, "the court may entertain jurisdiction for this cause, and decree accordingly." The words, "any other state," obviously mean the states of the Union—all understand the expression in this sense. There can be no reasonable presumption that it meant foreign sovereignties and governments, although the term is generic. Our courts entertained no jurisdiction for such causes, occurring in other states of the Union, before the passage of the statute: Dorsey *v.* Dorsey, 7 *Watts* 349. And it was decided in McDermott's Appeal, 8 *W. & S.* 251, that for causes occurring in a foreign country, the courts had no jurisdiction. If the domicil of a husband in a different state from that of the wife, constituted it, by implication, her domicil, not to protect, but destroy her marital rights, and no actual *bonâ fide* domicil be essential, it seems to me that it was an act of supererogation in the legislature to pass the statute of 1850, even as between the states of this Union; for if the husband moved into this state, from any other state or country, his domicil being here, it, *eo instanti*, became the domicil of his wife, and by this fiction she would become amenable to the jurisdiction of our courts, although absent, as in this case, and he could thus obtain a divorce without the aid of any such legislation. But this was held not to be the law in the cases already cited. Neither the respondent, nor cause of complaint, being found to be within the jurisdiction of the court, they were clearly right in dismissing the libel.

Decree affirmed at the costs of the appellant.