## Grove's Appeal.

*Cause of Divorce from Bed and Board.—Amendment of Libel.—Justification of Respondent.*

1. Where a libel for divorce averred a turning of libellant out of doors on a certain day by the respondent (her husband), which act, on issue joined, was found to have been done at a subsequent date, an amended libel was filed by leave of the court, which averred that after the date in the original libel and while libellant was living separate and apart from her husband, she repeatedly offered to return and cohabit with him as a true and lawful wife, which respondent refused to allow. *Held*, that, as the libel averred an actual and (as amended) a constructive turning out of doors, no new cause was presented, and the amendment properly allowed.

[Grove's Appeal.]

2. Where it appeared that libellant returned to her husband's house, with her trunk and her children, on a winter evening, that she was reluctantly admitted, and, after she had warmed, was told to go, and was pushed out by her husband while begging permission to remain; it was *held* good cause for a divorce from bed and board.

3. Nothing less will answer as a justification of such conduct on the part of a husband, than that which would be sufficient cause for divorce at his suit.

ERROR to the Common Pleas of *Allegheny county*.

This was a *libel sur divorce* by Mary Grove by her next friend James Haines, against Samuel Grove, which, after the usual averments of marriage, cohabitation, &c., charged the respondent with having, " on the 15th of September 1856, turned libellant out of doors, and forbid her ever to enter his house;" and with having, at other times before that date, subjected her to degrading abuse in the presence of his family and strangers, with averments of personal abuse, &c., &c.

To this an answer was filed, denying the material averments in the libel, whereupon a commissioner was appointed to take testimony in the case. The testimony showed that if ever there was an actual "turning out of doors" by the husband, it took place in January 1857.

An amended or supplemental bill was then filed and allowed, in these words:—" That, shortly after the said 15th day of September, A. D. 1856, when she was living separate and apart from her said husband, being anxious of returning to his residence and cohabiting with him, as man and wife ought to do, she repeatedly offered to return and so cohabit with him as a true and dutiful wife, and as she always was willing to do; but that he, her said husband, wholly refused to permit her to return to his residence and to cohabit with him."

The case was then heard by the court below (MELLON, P. J.) on the testimony, and a divorce *a mensa et thoro* decreed; from which decree the respondent appealed to this court, and assigned for error the following matters, to wit:—1. The court erred in allowing the libellant to amend her libel when the case was first reached for argument on the list,—the testimony in the case being then closed on both sides, and filed in court, on the only issue joined in the case.

2. In decreeing a divorce *a mensa et thoro*—not on the issue joined in the case, but on an amendment improperly allowed; the testimony showing clearly that defendant always treated libellant kindly, and provided well for her until she had left him the second time without any just cause, and showing, also, that she behaved herself in an improper and disorderly manner during nearly all the time she was at home, against which respondent kindly remonstrated from time to time; the testimony further showing that the refusal, if any there was, to take her back, was

[Grove's Appeal.]

after she had voluntarily absented herself for some months without just cause, and was not an absolute refusal, but was coupled with a qualification, that he wished proper assurance before taking her back that she would not disturb the peace of his family, as she had done; the testimony clearly showing that he was entitled to such assurance before receiving her back, inasmuch as she had forfeited her right to return home, by her unwomanly conduct in the family and in leaving home.

3. That the court, under the original bill and answer, and issue formed thereby, and the evidence taken on said issue, should have dismissed the bill. And by permitting the amendment when the case was set down for argument, they made a decree on a bill, to which no answer was filed and no issue formed, against the consent of the respondent, thereby doing him great injustice, and committing manifest error.

4. The court erred in decreeing a divorce under the evidence in the case.

*Woods & Watson*, for appellant, cited and relied on 1 Paige's Rep. 276; Hopper *v.* Hopper, 11 Paige 46; Whispell *v.* Whispell, 4 Barbour 217, 219; Light *v.* Light, 17 S. & R. 273; Butler *v.* Butler, Parsons's Reports.

*Brady & Gill* (with whom was *T. B. Hamilton*), for appellee, on the propriety of the amendment cited Benner *v.* Fry, 1 Binn. 469, 370; Bailey *v.* Musgrave, 2 S. & R. 219; Cassell *v.* Cook, 8 S. & R. 287; Weidner *v.* Mathews, 1 Jones 340; Stewart *v.* Kelly, 4 Harris 160.

On the main question they relied on Addison on Con. 709; McDermot's Appeal, 8 W. & S. 251; Cunningham *v.* Irvine, 7 S. & R. 257; McCutcheon *v.* Gaery, 11 Johns. Rep. 281.

As to the power of the court to order an allowance of money to libellant for expenses of suit, &c., they cited Kline *v.* Kline, Phil. Rep. 130; Ormsby *v.* Ormsby, Id. 350; Graves *v.* Cole, 7 Harris 171.

The opinion of the court was delivered, January 7th 1861, by

STRONG, J.—The libel of the complainant, as at first filed, averred that the respondent, on the 15th day of September 1856, turned her out of doors, and forbade her ever to enter his house. This was denied in the answer of the respondent, and upon the issue thus formed testimony was taken. That testimony proved that, if there was an actual turning the libellant out of doors, it was in January 1857, and not, as averred in the libel, on the 15th of September 1856. An amendment of the libellant's petition was then allowed, by which it was made to aver that shortly after the said 15th day of September, when she was living sepa-

[Grove's Appeal.]

rate and apart from her said husband, being desirous of return-
ing to his residence and cohabiting with him, as man and wife
ought to do, she repeatedly offered to return and so cohabit with
him as a true and dutiful wife, and as she always was willing to
do, but that he, her said husband, wholly refused to permit her
to return to his residence to cohabit with him." This amend-
ment was asked for on the 11th of June 1860, but the applica-
tion was held under advisement until the case was called for
argument, when it was allowed. The respondent alleged no sur-
prise, and asked for no further time to take additional depositions,
or to meet the new phase of the case.

We do not perceive why the amendment was not allowable.
It presented no new case, it was only a mere specific statement
of the cause of complaint originally made. The libel charged a
" turning out of doors;" the amendment charged the same,
though the one was actual and the other constructive. Refusing
to receive a wife was held, in McDermott's Appeal, 8 W. & S.
251, to be a virtual turning her out of doors, within the meaning
of our statute, and this on the ground that the statute is a muni-
cipal regulation for the protection of the community as well as
the wife. The time designated in the libel was not descriptive
of the alleged offence, and therefore was not material, though
the respondent might have called for a specification of the time,
and thus have made it descriptive. The amendment then was
but a detail of the circumstances which constituted the " turning
out of doors."

We have more difficulty with the merits of the case. The con-
duct of the wife was bad. Provoked and aggravated as she no
doubt was by the misconduct of her step-children, her own de-
meanour and actions are not to be justified. Nothing found in
the evidence, nothing in the treatment received from her husband,
can excuse her repeated desertions of his house, and her long
abandonment of her conjugal duties. But does the evidence
establish that the respondent turned her out of doors? If the
testimony of Weaver is to be believed, on a cold and snowy
night in January, when she came to her husband's house with
her trunk, and her two small children, she had difficulty in obtain-
ing admission even to warm herself. After she had remained
there some ten minutes the respondent told her, "as she was
now warm, to go." She begged hard to stay, but he took her
by the arm and pushed her out. The testimony of George W.
Burns, though not quite so direct, confirms that of Weaver. He
proves that Mr. Grove would not permit his wife to remain, that
he told her she must go the same way she came. Other wit-
nesses prove that on different occasions she expressed a desire to
return, said she was willing to go back and live agreeably with
her husband, that they could live peaceably together, but that

he steadily refused to receive her. Such is the testimony of Mr. McKarahan, Rev. Mr. Prestley, and Hugh Duff. In the face of this evidence it is impossible to deny that the alleged cause for a divorce from bed and board is made out. The wife was turned out of doors, actually, according to the testimony of Henry Weaver and George W. Burns; at all events constructively and substantially, as proved by other witnesses.

We are next brought to the inquiry whether there is anything in the case that amounts to a justification of this act done by the husband. If there be, it must be found in the passionate conduct of the libellant, her unkind treatment of her step-children, and her inexcusable departure from her home about the middle of September 1856. We make no attempt to apologize for these things. Admitting all their culpability, as fully as it is shown in the testimony, the question still remains, do they justify the husband in turning his wife out of doors? We cannot say that they do. Nothing less will answer for a justification than that which would be a sufficient cause for a divorce at the suit of the husband. We have adopted the same principle which rules in the English ecclesiastical courts. In that country, when cohabitation is suspended by either the husband or wife of his or her own motion, without a sufficient reason, a suit for a restitution of conjugal rights may be maintained by the injured party. Nothing amounts to a bar against such a suit, except such facts as would entitle the defendant to a divorce: Olive v. Olive, 1 Haggard Con. Rep. 361; Dysart v. Dysart, 1 Robertson Eccl. Rep. 106. Nothing short of such facts will justify a wilful separation or a continuance of it. The interests of society, the happiness of the parties, and the welfare of families, demand such a rule. Separation is not to be tolerated for light causes, and all causes are light which the law does not recognise as ground for the dissolution of the marriage bond. We are constrained, therefore, to hold that the respondent had no sufficient cause for turning his wife out of doors, or refusing to permit her to return when, repentant, she desired to do so.

The decree of the Court of Common Pleas is affirmed.