## Isenberg v. Isenberg, Appellant.

*Divorce—Desertion—Evidence—Sufficiency.*

In an action for divorce on the ground of desertion, a decree granting a divorce will be reversed, where the evidence fails to prove any wilful or malicious desertion on the part of the respondent.

Where, under the conditions presented by this record, a husband neglected to provide a home other than that of his own parents, and the wife refused to go there to live with him, her refusal does not amount to wilful and malicious desertion and it is error, under such circumstances, to grant a decree in divorce.

Argued October 26, 1920. Appeal, No. 174, Oct. T., 1920, by respondent, from judgment of C. P. Huntingdon County, Dec. T., 1918, No. 17, granting a divorce in the case of Orlady Isenberg v. Sadie M. Isenberg. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Libel in divorce. Before BAILEY, P. J.

The case was referred to Charles C. Brewster, Esq., as master, who recommended that the libel be dismissed.

On exceptions to the master's report the court sustained the exceptions and granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

*William Wallace Chisolm,* for appellant.

*James S. Woods,* for appellee.

OPINION BY HEAD, J., March 5, 1921:

The parties to this appeal were married in 1909. Each one was of mature age and had been formerly married, and each had offspring by their first marriage. At the time of the filing of this libel the children of both the parties had reached the age of maturity. From the date of their marriage until 1917, the evidence discloses no obstacle whatever to the contentment and happiness that ought to be incidental to the marriage state. During those years they lived together in a rented house. In January, 1917, they were notified they must give up the possession of the demised premises and necessarily the question arose of securing another home. At that time the father and mother of the libellant and his grown daughter resided in a house on 7th street in the Borough of Huntingdon, owned by the libellant's mother. These people were advancing in years and probably found the continued ownership and maintenance of the property a burden upon them. At all events it was finally determined that the parents would sell and the libellant and respondent would buy the property, and an article of agreement providing for its sale and purchase was drawn up and duly executed by the father and mother as vendors and by the libellant and his wife as purchasers. We think the great weight of the evidence supports the

contention of the present respondent that the understanding was the old people were to leave the house and that the libellant and respondent should occupy it as their home as they had previously lived during all of the preceding years of their marriage. The respondent so testifies. The libellant does not make denial; indeed he practically admits the situation was as she testifies. That agreement was executed on the 27th day of March, 1917. There is convincing evidence, outside of the parties themselves, that the old people were quite willing to go, and that others of their children were as willing they should come and make their home with one or the other of them.

On the 31st day of March, 1917, the respondent went to Altoona. That was about the date when the old home was to be broken up. Her husband accompanied her to the train and gave her money to pay her fare. Part of her goods had been stored at the house of her son who lived in Huntingdon, and part of them had been removed to the property which she and her husband had undertaken to buy. We are unable to discover in the brief record of what had occurred up to this time any evidence at all that her departure for Altoona was in any way indicative of an intention on her part to wilfully and maliciously desert her husband. She testifies he told her when leaving that he would come up for her and that he would send her money while there. In the course of time she began a proceeding against him for nonsupport and obtained an order. She never heard anything from him until June 27, 1918, some fifteen months after she had gone to Altoona, where she was residing, as we understand the situation, with one of her sons. On the date last mentioned, this libellant wrote to his wife the first letter since her departure. It was in this language: "The home I am trying to buy is still open for you. Mother and Margeurite will remain in the home. I am now asking you to come." That was after the court had made an order requiring him to pay $25 a month for her

support. On the 23d of July he wrote her another letter, enclosing a check for $25, reminding her that he had asked her to come, but that mother and Marguerite were still to remain in the house, and concludes: "Now I will ask you again to come. Respectfully, Your husband." Shortly thereafter this proceeding was begun.

The testimony of the respondent is convincing to us that she was at all times ready to go to her husband, but was unable to live amicably or happily with his mother. As already stated, the understanding appears to have been that the father and mother would vacate and made no objection whatever to doing so. In point of fact they did not abandon the property and each one of them continued to live there until the end of their respective lives. What the influence was that prevented their going and thus delayed the coming home of the respondent we are left to conjecture.

However there is but little use in prolonging this opinion by citations from the evidence. The controlling questions are of fact and we think it sufficient to say that we are all of the opinion the libellant has failed to establish a case of wilful and malicious desertion within the meaning of the statute, and the learned judge below should have dismissed the libel. The decree is reversed and the record remitted to the court below with direction to enter an order or decree dismissing the libel at the cost of the libellant.