## Brous v. Brous.

*Divorce—Desertion—Right of husband to fix domicile.*

1. The right of the husband to fix the matrimonial domicile must be exercised with due regard for the health, comfort, welfare and peace of mind of the wife.

2. Where, in disregard of her wishes, he insisted upon her living with him in one room in a house controlled by his sisters, of which he was part-owner, where he expected her to do the household work for the joint establishment, her refusal to follow him, under the circumstances of the case, was held not to be legal desertion.

3. Under such circumstances, the wife's refusal to follow her husband was regarded as reasonable and rebutted the presumption of an intent to desert, which otherwise might have arisen from her failure to follow him to the home he had selected.

In divorce. Exceptions to master's report. C. P. No. 5, Phila. Co., Dec. T., 1922, No. 760.

I. E. Sauder, for libellant; J. M. R. Jermon, for respondent.

MONAGHAN, J.—The parties to this action in divorce were married April 13, 1916. The husband is now about sixty years of age and his wife about forty-six. Immediately following the marriage, they did not have a common dwelling for more than a year; then the husband joined the wife in her residence on Percy Street, where they lived until March, 1920. They then moved to No. 2831 Germantown Avenue, where they resided until the final separation, Nov. 2, 1920. There were no children born of the marriage.

On Nov. 22, 1922, the husband filed the libel, in which it was alleged that the wife wilfully and maliciously deserted him on Nov. 2, 1920. The master found

the charge substantiated by the testimony, and recommended that a decree of divorce be granted. The respondent filed the exceptions now before us for disposition.

The legal proposition upon which the libellant's counsel rests is that a husband has a right to change his home, if his business, his comfort or his convenience requires it, if he provides another suitable place of residence, and if his wife refuses to accompany him to his new home without cause, her refusal constitutes a desertion for which a divorce will be decreed: Beck v. Beck, 163 Pa. 649; Monahan v. Auman, 39 Pa. Superior Ct. 150. The correctness of this statement of law, as a general proposition, is conceded, but in applying it to the facts of the case, it is also to be borne in mind that to justify a decree of divorce on the ground of desertion there must be a clear intention to desert, wilfully and maliciously persisted in, without cause, for two years. The fact that the respondent did not follow her husband to a place of abode selected by him is not conclusive upon the question of intention. There may be circumstances which will rebut the presumption of an intention to desert, which otherwise might arise from the failure of a wife to follow her husband to his new home. See Bishop v. Bishop, 30 Pa. 412; Angier v. Angier, 63 Pa. 450; Horn v. Horn, 17 Pa. Superior Ct. 489; McBrien v. McBrien, 63 Pa. Superior Ct. 576.

The right which the husband exercises in the selection of a place of abode or domicile is not an entirely arbitrary power. He must have due regard for the health, welfare, comfort and peace of mind of his wife: Franklin v. Franklin, 190 Mass. 349; Brewer v. Brewer, 79 Neb. 726; Hall v. Hall, 69 W. Va. 175; 9 Ruling Case Law, 365.

Consonant with the principles we have stated, it has frequently been held in this State that a wife is not chargeable with desertion because she refuses to live at the home of her husband's relatives, especially where her living there is made unpleasant: Ball v. Ball, 8 Dist. R. 678; Benscoter v. Benscoter, 20 Dist. R. 349; Le Grand v. Le Grand, 24 Dist. R. 244; Reynolds v. Reynolds, 62 Pa. Superior Ct. 280; McCampbell v. McCampbell, 64 Pa. Superior Ct. 143; Isenberg v. Isenberg, 75 Pa. Superior Ct. 551. In the cases just cited, the husband's parent or parents were in the control of the home to which the wife refused to follow him; but the reasons on which those decisions rest are surely of equal cogency in a case where the home is in charge of his sisters or other immediate relatives.

The libellant in this case charges that his wife refused to follow him to a home then in the control of his two sisters and a brother-in-law. The burden is upon him in such a case to show that she refused, without cause, to change her residence: McBrien v. McBrien, 63 Pa. Superior Ct. 576; see, also, Angier v. Angier, 63 Pa. 450; Kurniker v. Kurniker, 54 Pa. Superior Ct. 196. And the evidence to establish that her refusal was wilful and malicious must be clear and satisfactory, for a marriage should never be dissolved without clear proof of imperious reasons.

After an examination of the evidence, we are not convinced that the wife was without reasonable cause in refusing to follow her husband to the new abode he had selected; on the contrary, we are of opinion that his demand was arbitrary and without due regard to her welfare, comfort and peace of mind. From the date of their marriage until on or about Oct. 14, 1920, the evidence discloses, no quarrels or misconduct on the part of either libellant or respondent which might seriously interfere with or mar the contentment and happiness that ought to be incidental to the marriage state. From March to November, 1920, they lived, together with two sisters of the respondent, in

apparent harmony and comfort in the property No. 2831 Germantown Avenue. The libellant was earning monthly about $80, which he turned over to his wife. She acted as housekeeper and also managed a laundry business on the first floor of the premises. In her work she was assisted by her two sisters. One Weitzel was the owner of the premises and the proprietor of the laundry. He paid wages to the respondent for her services, and, in addition, gave her the use of the entire property, free of any charge for rent. About the latter part of September, 1920, Weitzel requested the respondent to deliver possession of the premises to him on Nov. 1, 1920. She informed her husband of the request, and asked whether she should secure another house. He told her he would let her know "when the time comes." On or about Oct. 14, 1920, the libellant informed his wife that he was going home to live and that she was going with him. He gave her, however, until election day, Nov. 2, 1920, to make up her mind to accompany him. His wife inquired of him what his folks would do when she "got up there;" he told her they were going to stay there. The home to which the libellant referred to was No. 4935 Royal Street, Germantown, of which he was part owner. For years that property had been the home of the libellant's parents and their children. In October, 1920, it was occupied by two sisters of the libellant, his brother-in-law and a niece. The brother-in-law was paying the expenses of that home, one of the sisters was housekeeper, the other paid board; the niece did not contribute. The libellant was not receiving any rent from the property, and paid the taxes therefor. The premises No. 4935 Royal Street consisted of a three-story dwelling with front, side and back yard, the rear line of which was on Portico Street. The property was situated in a respectable neighborhood, and was suitable for the habitation of persons in the station of life of the parties to this action. It was the intention of the husband to live with respondent in the third story rear bedroom of the property; he and his wife would have the privilege of the entire house. The respondent was not unfriendly with the libellant's relatives, but she had never visited their home in Royal Street, except on about two occasions.

Between Oct. 14 and Nov. 2, 1920, the husband and wife did not discuss the question of moving. On the latter date the husband had the third story rear room of the Royal Street house in condition for habitation by himself and wife, and he proceeded to move his belongings from Germantown Avenue to his new abode. His wife was present when he was moving. He testified that he told her he would send for her goods when she was ready to move, to which she answered that she was not going with him. The wife testified that on this occasion she asked her husband if he wanted her to do the work for his sisters, his brother-in-law and his niece. He answered, "Yes." The respondent then said: "That I won't do. I will do anything for you, but I will not work for your people." When the conversation occurred, the parties were alone, and, therefore, there is not corroboration of either as to the words spoken. Since what was said by the one is not contradictory of what was said by the other on that occasion, we give full credit to the statements made by each. This being the case, we are of opinion that the wife was entirely within her rights in refusing to follow her husband to the home of his relatives, after he so curtly informed her that he wanted her to do the work for them. In so expressing himself, the husband showed that he had not a due regard for the welfare, comfort or peace of mind of his wife; he must have known from her actions then and before that she would be unhappy if he insisted that she follow him to his new abode, where she would not have control of the home. The husband has not an entirely arbitrary right to select the abode. He must

give consideration to the reasonable demands of the wife for a home apart from his relatives. The situation of the parties at the time of the separation was such that they could well afford to maintain an independent home. The husband was then earning $75 or $80 a month, and the wife, apparently, had an earning ability. The husband should not be permitted, under the circumstances, to require his wife to follow him to his relatives' home, and to become a menial for them. The wife's refusal so to do was reasonable and rebuts the presumption of the intent to desert, which otherwise might arise from her failure to follow the husband to the home he had selected.

The libellant has lived in the Royal Street house from Nov. 2, 1920. The respondent continued to reside in the Germantown Avenue address from that date until March, 1921, when she moved to Letterly Street, where she still lives. After the separation, the husband met the wife at her request on three occasions, Nov. 15, 1920, Jan. 6 and June 8, 1921. At two of the meetings she asked him to contribute to her support, and he refused to do so because she would not live with him in the Royal Street house. The wife testified that she was always ready to live with him at any other suitable place, but he would not listen to such a proposition, and did not contribute to her support until she brought him before the Municipal Court in October of 1921. At the first hearing there, the court asked him whether he was willing to provide a home for his wife outside of the one in which his relatives were living. The libellant admits that he then promised the court to provide a home for his wife, separate and apart from his people, and that the court gave him two weeks in which to make good his promise.

On Oct. 30, 1921, respondent received a letter from libellant, in which he said:

"Madam: You can call at Germantown Ave. and Seymour St. Mon. eve. Oct. 31, to look at your apartments and home. 8 o'clock sharp.

"WM. B. BROUS."

The libellant met the respondent at the designated time and showed her a receipt for $15, which he had paid for a room in a house on Portico Street. He accompanied her to that house, the front of which faced the back yard of the Royal Street property, in which he was living. The respondent examined the room, and when she rejoined her husband in the street, she testified that she asked whether he was going to live with her in that room; that he said, "No," he was going to live in his home, and he pointed to the rear of his Royal Street property. The libellant denied that he made such a statement. The burden of proof is on the husband to establish that his offer to provide the home was *bona fide.* His testimony is uncorroborated. However, the letter just quoted contains in its cold, formal tone, language, address and subscription, persuasive evidence that he did not intend to live with his wife in the room he had rented. In the direction to the wife, "Call . . . to look at your apartments and home," the use of the word "your" by the libellant tends to support, in some degree, the testimony of the wife. The weight of the evidence on the controverted question is, therefore, in her favor. We believe the respondent's version of the affair, and, under the circumstances, she was justified in refusing to live in the room, because the husband's offer was obviously not made in good faith.

We cannot, in consideration of this phase of the case, lose sight of the fact that the husband admits that he made a promise to a judge of the Municipal Court, in October, 1921, to establish a home for himself and wife apart from the abode of his relatives, and that, in pursuance of his promise, he rented the room in Portico Street and offered it to his wife, ostensibly as a home for both

of them, separate and apart from his people. He was under no compulsion to make the promise. He could have refused to do so. His voluntary action in making it, however, was inconsistent with the position he had theretofore assumed in demanding that his wife follow him to the home of his relatives, and was notice to her that he did not require her to return to that abode. When he made the promise, there was, in effect, a mutual consent of the parties that she should not be required to return to the home of his relatives, and that she would resume marital relations with her husband in an independent home to be selected by him. He could not thereafter claim that his wife was persisting in a wilful and malicious desertion, if she was willing to join him in an independent home of his choice. After making the promise, the husband never made a *bona fide* offer of a home separate from his relatives, although his wife at all times had been willing to join him in such an one. The libellant's formal offer on Oct. 31, 1921, of the room in Portico Street, not having been made in good faith, was tantamount to either a refusal by the husband to receive his wife or to a willingness on his part that she remain away from him. The separation of the parties from Oct. 31, 1921, must, therefore, be regarded as consentable on his part, and the status would so remain until he made a *bona fide* offer to resume marital relations in a home separate and apart from that of his relatives; and this he has never done. Assuming, but not conceding, that the separation on Nov. 2, 1920, was wilful and malicious on the part of the wife, it has becomes a separation by the consent of the husband within two years, and is not a ground for divorce.

The exceptions are sustained and the libel is dismissed.