## Eckhardt v. Eckhardt

*John F. Kane*, for libellant.

ALESSANDRONI, J., November 30, 1943.—This is an uncontested action in divorce, instituted by the wife libellant, on the ground of desertion alleged to have had its inception on February 11, 1938. Summarizing the testimony submitted on behalf of libellant, it appears that from the beginning, on June 30, 1923, this marriage was beset by two problems: Firstly, the desire of respondent to maintain residence with his parents; secondly, financial insecurity promoted in part by the human frailty of an appetite more expansive than the pocketbook.

At the time of the marriage respondent was working as a printer together with his father, either in the capacity of a partner or an employe. For the first three months they resided together with respondent's

parents, in whose home they occupied one room. During the latter part of the stay there libellant undertook part-time employment for the dual purpose of keeping herself busy and accumulating money with which to set up an independent home. The latter was finally realized at 1311 South Fifty-eighth Street, where they had an apartment. There they remained alone for the next 2½ years, during the greater part of which libellant sought employment in order to provide money for their living expenses.

Thereafter they removed to 928 Ormond Avenue, Drexel Hill, in a home they purchased with a down payment of $1,500 received by respondent from his father in payment of wages then due him. They remained there for about seven years in all; five years as owners and, after foreclosure of the property, for an additional two years as tenants. During all of this time the financial condition of the parties was unstable. Libellant's brothers, who boarded with them, each paid $10 per week which provided for the household needs, and, to meet the interest and taxes due on the house, respondent was obliged to borrow approximately $1,500. The rental for this house being beyond their means, the parties removed to 5120 Cedar Avenue, Philadelphia, where they resided for 2½ years.

Libellant testified that here also, in order to be able to meet their obligations, her two brothers resided with them and, after the marriage of one brother, they took in a woman as a boarder. During this period also, libellant sought part-time employment in order to supplement their meagre and uncertain income. At this time respondent's parents occupied an apartment and, to reduce their expenses and satisfy respondent's desire, the two families removed to Manoa in a property described as two-family in nature. The parties to this action had three rooms on the first floor and respondent's parents occupied the second floor, on which the only bathroom was located.

Here the parties resided together for two years prior to the separation. Libellant testified that she was totally without privacy; that respondent's parents walked through their bedroom, probed into her personal belongings, and "there was a lot of fussing and squabbling all the time". Further, libellant was obliged to continue employment in order to provide funds for the household needs. When libellant complained about the conduct of respondent's parents and requested that they remove to a smaller place more in keeping with their financial means, respondent declared he would not leave his parents; that "he felt his mother and father were his first consideration".

She testified that bills were constantly in arrears, the utilities were disconnected for failure of payment, and the rent was substantially in default. During the last months the parties resided together, libellant secured night employment, returning home about 3:30 a.m. She was, however, unable to get adequate sleep because early in the morning respondent's parents came through the apartment, walking through her bedroom and awakening her. As a result of this her health declined and she was under the care of a physician.

On February 11, 1938, libellant removed from Manoa to 1220 South Fifty-seventh Street, where she occupied a room in the home of friends for a year. She next resided in an apartment at Forty-seventh Street and Springfield Avenue for five or six months, thence removing to another apartment at 4725 Chester Avenue where she remained until October 1942. At present she resides with her sister at 2636 South Colorado Street. During all the time of separation, she saw respondent on numerous occasions and frequently suggested to him that he remain with her. This proposal was rejected, even though libellant offered to pay the rent, on the grounds that the apartments were too small and his parents were his first consideration.

Libellant explained the circumstances of the separation as follows: "Well, I knew that we had been sheriffed before in Drexel Hill, and I figured that we would be sheriffed again. I thought if I would leave, he would see he was living way beyond his means and then break up, and then we could maybe get another little place by ourselves, and I thought his folks could find a little place of their own."

Libellant's expectations, however, proved fruitless. At no time after the separation did respondent offer to resume cohabitation with her. In April 1939, she last suggested to him that he reside with her and he refused to do so, assigning the reasons previously mentioned. Subsequent to the filing of the master's report, the libel was amended to fix the time of desertion as of the first part of April 1939.

The master, who unquestionably considered this matter with great care and fidelity, has recommended that the libel be dismissed. To the conclusions reached on the basis of this record, however, we cannot agree. Considering his report we sense that the master was unduly impressed with the laudable devotion of respondent to his parents; so much so, that he has overlooked the obligation which respondent, by marriage, assumed with regard to his wife. Further, we are of the opinion that counsel for libellant erred, in the preparation of the libel, by setting forth February 11, 1938, as the date of respondent's desertion. Clearly there was no desertion, constructive or otherwise, as of that date in the fact of libellant's removal from the home of respondent and his parents. The desertion, however, had its inception when libellant's solicitation of respondent that they set up a separate residence, as to which there was no contradiction, was finally rejected. That date was fixed by the testimony as of the first part of April 1939, and the libel has been amended accordingly.

The fact situation herein presented is atypical. The more usual situation upon which our courts have spoken is that wherein the failure of a party to provide a home other than with his parents has been asserted as a defense to a charge of desertion. In such a situation the sufficiency of the defense is well established: Isenberg v. Isenberg, 75 Pa. Superior Ct. 551 (1921) ; Rood v. Rood, 117 Pa. Superior Ct. 291 (1935). In the last-named case it was said (p. 293) :

"The duty of a wife to live with her husband at such reasonable place which he can, according to his means, provide as a home is undoubted, MacDonald v. MacDonald, 108 Pa. Superior Ct. 80, but the right which the husband exercises in determining the place of abode is not to be used arbitrarily. He must have due regard for the comfort, welfare and peace of mind of his wife, 9 R. C. L., page 365, Sec. 151."

The basis for this rule is to be found in a conflict of duty and loyalty which has been the "crown of thorns" torturing many a matrimonial brow. To the perhaps insoluble moral problem, however, the law has imposed its clear rule; respondent's "first duty was to his wife": Devlin v. Devlin, 134 Pa. Superior Ct. 21, 23 (1938).

If, therefore, the removal of a wife from the common home under such circumstances does not constitute desertion on her part, are the parties thereafter to remain suspended in an hiatus and frozen in the barrenness of the matrimonial status alone? It would indeed be anomalous if she be blameless in her removal and yet be powerless either to cure or end the relationship. Under the law she is not without relief. If she thereafter, in good faith, makes an offer to resume cohabitation with respondent under suitable circumstances and he refuses that offer, such refusal constitutes a desertion: 1 Freedman on Marriage and Divorce, 633. See also Casey v. Casey, 21 Dist. R. 705.

The master, in recognition of the foregoing principle, determined its inapplicability because of two

reasons: Firstly, because he believed there was no evidence of an attempt at reconciliation on the part of libellant; and, secondly, because he was of the opinion that her employment was motivated by a desire for freedom and money. We cannot agree with either of these conclusions. While we are under no compulsion to assume the veracity of a libellant's testimony, even though uncontradicted, on the other hand we do not believe it may be summarily dismissed. Libellant's narrative of a straitened financial status and the resultant necessity of seeking employment from the earliest days of this marriage, her testimony concerning boarders and lodgers to supplement income, foreclosure, termination of utility service because of nonpayment of bills, and the like, are more consistent with *need* than *desire* to abandon the matrimonial status in search of "freedom" therefrom. We cannot separate her employment at the time of the separation from the antecedent history. Likewise, we cannot separate her testimony concerning the requests she made of respondent that he resume cohabitation with her from the history of the earlier invasion of her privacy and her repeated requests that she and respondent reduce their standard of living and seek residence separate and apart from his parents.

The master erred in treating the fact situations in vacuo. Upon the whole record we are of the opinion, and accordingly find, that respondent did wilfully and maliciously desert libellant, in violation of his matrimonial obligation and the acts of assembly in such case made and provided.

### Order

And now, to wit, November 30, 1943, the master's report heretofore filed and the recommendations therein set forth are set aside and the exceptions of libellant are sustained. Let rule for final decree in divorce issue, sec leg. et sec reg.