## Penman v. Penman

*Edwin K. Logan,* for plaintiff.
*Mont L. Ailey,* for defendant.

BRAHAM, P. J., August 7, 1946.—This is an action for divorce on the ground of desertion. It was plaintiff who ceased to live at the common domicile. He invokes the doctrine of constructive desertion. It is our task to determine whether and to what extent the doctrine of constructive desertion obtains in Pennsylvania and whether plaintiff has brought himself within the operation of the principle.

The general subject of constructive desertion was before this court in our recent case of Carson v. Carson, 5 Lawrence 26, in which case, following Carl v. Carl, 48 D. & C. 459, we ruled that a putting out of doors, although ground for divorce a mensa et thoro, is not ground for divorce a vinculo matrimonii. The dictum of Judge Orlady in Hartner v. Hartner, 75 Pa. Superior Ct. 342, to the effect that constructive desertion is a term unknown to our law was referred to and upon the facts in the Carson case it was found that no cause of divorce was made out, plaintiff testifying only that her husband told her to leave.

There has been a great deal of uncertainty in our law as to constructive desertion but a complete exam-

ination of our cases indicates the dictum in Hartner v. Hartner to be true in only a limited sense. If by constructive desertion is meant a separation induced merely by a direction or command of the offending spouse unaccompanied by real or threatened force or a separation caused by the general bad conduct of the offending spouse or a putting out of doors without more, our law does not allow constructive desertion as ground for divorce. Thus one spouse may not leave merely because the other advises or commands him to and allege constructive desertion: Sowers' Appeal, 89 Pa. 173; Barnes v. Barnes, 21 D. & C. 101. Nor does conduct which amounts to cruel and barbarous treatment or indignities to the person, but without a turning out of doors, actual or constructive, entitle the injured and innocent spouse to leave and secure a divorce on the ground of desertion: Young v. Young, 82 Pa. Superior Ct. 492; Moser v. Moser, 125 Pa. Superior Ct. 180; Buys v. Buys, 56 Pa. Superior Ct. 338. (A mere putting out of doors without more does not establish desertion. The essential element is the intent to desert persevered in for two years) ; Diehl v. Diehl, 5 Berks 190; Carl v. Carl (supra) ; 1 Freedman on Divorce 607.

Mention has been made of constructive turning out of doors. This occurs when the injured spouse is not forcibly put out of the house but, being absent, is forcibly prevented from returning: Grove's Appeal, 37 Pa. 443; McDermott's Appeal, 8 W. & S. 251. This idea of a constructive turning out of doors as the basis for a divorce for constructive desertion is important in the present case for such is the theory of plaintiff's case.

The cardinal principle, however, is the requirement of the statute that divorce on the ground of desertion may be granted only where defendant "shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term

and space of two years: . . ." Act of March 19, 1943, P. L. 21, 23 PS §10 (d).

Desertion may be committed by forcibly ejecting the spouse as truly as by wilfully leaving the common habitation. In either case the important factor is the intent permanently to separate from the innocent spouse. As has been said, the forcible eviction alone is ground for divorce a mensa et thoro but is only evidence of the larger intent which is the true basis of desertion as ground for an absolute divorce. The statute requires wilful and malicious desertion and absence for two years without cause. Lacking this, no amount of putting out of doors or barring out of doors will avail.

The putting out of doors must be an actual one, by force or such threat of force as engenders a reasonable belief that the offending spouse will resort to physical violence: Sowers' Appeal, supra; Magee v. Magee, 71 Pa. Superior Ct. 594. The leading case is of course, Howe v. Howe, 16 Pa. Superior Ct. 193, where the court allowed a divorce to a wife who, cruelly treated for a long time, was finally forced to leave home after a sleepless night during which she had been choked and threatened with shooting. Some of the language of the opinion would indicate that mere violence which causes the injured and innocent spouse to leave is sufficient but this would allow a divorce for constructive desertion wherever cruel and barbarous treatment may be shown, a view which was rejected in Young v. Young, supra. The distinguishing feature between Howe v. Howe and Young v. Young is the actual turning out of doors; Barnes v. Barnes, supra; Johnson v. Johnson, 27 Dist. R. 1014.

Perhaps this may be best understood by following the language of the statute. The act does not denounce wilful desertion and absence from the common domicile but wilful desertion and absence "from the habitation of the injured and innocent spouse". Thus, if a

husband drives his wife from their home and she takes refuge in a house across the street and he by force prevents her return, he has made her residence across the street the "habitation of the injured and innocent spouse" and he must either allow her to return to him or he must offer to live with her there; otherwise it is desertion on his part.

The case of present plaintiff must be judged in the light of these principles. He says that his wife locked him out of their common home and kept him locked out and by this constructive putting out of doors committed desertion. The facts as we have found when briefly surveyed do not so indicate.

Plaintiff is 67 years old, defendant 65. They were married in 1914, he for the second time, defendant for the first. He had one daughter by a former marriage who was 11 years old. Plaintiff and defendant have one son who is 24 years old. Some difficulties between defendant and the daughter arose early in their married life, whereupon the daughter went to live with an aunt. Next there were difficulties concerning where they should live. Plaintiff who is a railroader found it difficult to obtain steady work at New Castle and in 1929 took a job out of Beaver Falls which necessitated his going back and forth to work each day. He wanted to get a home in Beaver Falls or Beaver but defendant was unwilling to do so because they owned a home in New Castle, not entirely paid for, and she was unwilling to leave it. They did not move.

The parties experienced considerable difficulty as time went on. He complained that she was too cold toward him and too improvident. She complained that he was harsh toward her and their son and did not provide her with sufficient funds.

In May of 1937 he published an advertisement in the papers denying responsibility for debts contracted by his wife. Early in September of 1937 the son, Jack,

never a robust child, contracted infantile paralysis and was critically ill. On October 14, 1937, defendant made an information against plaintiff charging desertion and nonsupport. The case came on for hearing about December 10, 1937, but was continued to allow the parties to become reunited and look after their sick boy. On January 29, 1938, reunion not having taken place, an order was made requiring plaintiff to support his wife and child. This order with modifications has been faithfully complied with by plaintiff.

Plaintiff complains that his wife locked him out of doors about December of 1937 and just after the order was made against him. He says that thereafter he was never able to gain access to his own house. This, says he, was a constructive putting out of doors which entitles him to a divorce for desertion.

Respondent admits that on some occasions she did deny plaintiff access to their home but says it was only during the illness of their son. The violent conduct of plaintiff disturbed the boy and she put the boy's welfare first. In this particular defendant may not have been wise and her action may be indicative of a more general shift in her affections from her husband to her son; but we find her explanation to be the key to the matter. The exclusion of plaintiff from his home, which did take place on a number of occasions, was not dictated by that wilful and malicious intention to desert for which the law looks but only by the determination of a mother to save her son by any means, wise or unwise. This attitude passed away with the emergency.

This hypothesis is most consistent with the evidence. The trip on which Peter Pietro accompanied plaintiff when defendant did not welcome plaintiff was in September of 1937. The occasion when Charles T. Robinson, who was delivering coal, heard defendant deny plaintiff's admission was, according to Robinson in 1937 or 1938. Defendant says it was while Jack was

sick and this we find to be the fact. Even the visit of the constable, Frank Connors, which was much more damaging to defendant's case when described by witnesses other than the constable himself, was placed by defendant in the period of Jack's illness and again we find this to be correct. The evidence of the witness, Russell M. Foster, who says that while in the company of plaintiff he saw a man running from the house is not convincing. Foster accompanied plaintiff to the home and saw his inability to get in on a number of occasions but these visits began according to him, in 1937 or 1938. He later placed them in 1938 but considering his evidence with that of defendant we find these events also to fall within the period of the son's illness.

Jack corroborates his mother in all material particulars. He fixes February or March of 1938 as the earliest time when he was able to be out and says his father frequently accused his mother falsely. He further corroborates his mother when she says that in the summer of 1937 plaintiff tried to make defendant leave. Plaintiff moved part of the furniture out in the endeavor to cause defendant to leave. This is very important. It shows that the very absence of which plaintiff now complains was with his consent. He wanted separation from his wife, preferably by her leaving, but since she would not leave he has tried to exploit defendant's acts in refusing him admission during Jack's illness. Furthermore, we find truth in defendant's evidence that plaintiff continued to enter the home even during Jack's illness for the purpose of bringing food and that thereafter he did visit her and enjoy marital relations, evidence which plaintiff does not deny.

If there were evidence of one clear effort on plaintiff's part to get his wife back after she was relieved from the strain—and perhaps hysteria—of her son's illness, we would look with more favor on his case.

We are inclined to agree with his idea that his wife should have gone to live with him at Beaver Falls in order to make his work easier but no separation took place at that time. We have endeavored to give careful attention to plaintiff's case because he has been faithful and honest in his compliance with the order for support, much more than is commonly true. A clean-cut effort to get his wife back at an earlier time might have demonstrated whether she intended to desert him and may still serve that office.

Entertaining these views we make the following

*Order*

Now, August 7, 1946, plaintiff's libel in divorce is dismissed at his costs.