## Ray v. Ray.

*Constitutional law — Judgments — "Full faith and credit" clause of the Constitution of the United States—Divorce—Service — Publication — Desertion—Estoppel—Mistake of law.*

1. Where a wife, deserted by her husband in Missouri, having established a residence in Illinois, obtained a divorce in that state after service on her husband by publication only in accordance with the Illinois statute conferring jurisdiction in such cases on the Illinois courts, analogous to the Pennsylvania Act of May 9, 1913, P. L. 191, such decree is valid in Pennsylvania as against a resident of this State who married her in Illinois and subsequently resided with her in Pennsylvania.

2. The law of the place of the actual *bona fide* domicile of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local laws without reference to the law of the place of the original marriage.

3. Under the present legislation in force in Pennsylvania relating to divorce, the courts of this State have jurisdiction over any cause for divorce originating in any other state or foreign country, although the respondent has been served with the subpœna by publication only.

4. A wife has a right to establish a separate domicile from that of her husband where his conduct entitles her to have the marriage dissolved.

5. The validity of the marriage between persons *sui juris* is to be decided by the law of the place where it is celebrated. Exceptions to this rule are (1) where the marriage is incestuous, and (2) where a state by statute prohibits one of its subjects or a class of such subjects to contract matrimony.

6. Where a man marries a woman in Illinois, knowing that she was divorced in that state, and subsequently conveys real estate in Pennsylvania to her, he is estopped from asserting the invalidity of the divorce as a ground for the recovery of his property.

7. Ignorance or mistake of law with full knowledge of the facts is not ground for equitable relief.

Exceptions to adjudication. C. P. Northampton Co., Feb. T., 1927, No. 1, in Equity.

The defendant, Nora D. Ray, married one Jones in the State of Washington, after which they resided in the State of Missouri as man and wife. Jones deserted his wife in Missouri and removed to Arkansas. Afterwards, she left Missouri and went to Illinois, where, having obtained a legal residence, she began proceedings in divorce against her husband on the ground of desertion in Missouri. The State of Illinois, at that time, had a statute in force precisely similar to the Pennsylvania statute of May 9, 1913, P. L. 191, conferring upon its courts jurisdiction analogous to that conferred upon the Pennsylvania courts by the Act of 1913. Service upon Jones was obtained by publication only. The Illinois court granted a divorce *a. v. m.*

She subsequently married Joseph L. Ray, the plaintiff, a citizen and resident of Pennsylvania, in Illinois, and resided with him as his wife at Bethlehem, Pennsylvania. Some time thereafter, Ray, learning that the divorce had been granted without personal service upon Jones, began proceedings in Pennsylvania to annul the marriage and filed this bill in equity to obtain a reconveyance of certain real estate in Northampton County, which he had conveyed to her and which they held as tenants by entireties, upon the ground that, at the time of her marriage to him, she was the legal wife of Jones, inasmuch as the Illinois courts had no jurisdiction in the matter by reason of the absence of personal service, and such divorce could not be recognized outside the boundaries of the State of Illinois.

*T. McKean Chidsey* (with him *Kirkpatrick, Maxwell & Chidsey*), for complainant.

*Raymond Pace Alexander* (with him *Maceo W. Hubbard* and *J. Cullen Ganey*), contra.

Ray v. Ray.

STEWART, P. J., April 2, 1928.—This case was thoroughly argued by counsel, and each member of the court subsequently has given his best thought to the questions involved. The facts are not really in dispute, and we adopt the statement of them contained in the opinion of the trial judge as correct. The amount involved is large, and the question seems to us not to have been decided in Pennsylvania, although many Pennsylvania cases were cited upon the argument, as well as numerous decisions of the Supreme Court of the United States and the highest courts of other states. We shall not attempt to reconcile the latter cases. As to the decisions of the Supreme Court of the United States, it is sufficient to refer to the case of Thompson v. Thompson, 226 U. S. 551. The third syllabus of that case is: "The courts of the state which is the domicile of the husband, and the only matrimonial domicile, have jurisdiction to render a decree of divorce in his favor entitled, under U. S. Const., art. IV, § 1, and U. S. Rev. Stat., § 905, U. S. Comp. Stat., 1901, page 677, to full faith and credit in the courts of the District of Columbia, although the wife has left the jurisdiction and can only be served by publication." In the opinion, Mr. Justice Pitney said: "But it is established that the full faith and credit clause, and the statutes enacted thereunder, do not apply to judgments rendered by a court having no jurisdiction of the parties or subject-matter, or of the res in proceedings in rem. . . . The subject, in its relation to actions for divorce, has been most exhaustively considered by this court in two recent cases: Atherton v. Atherton, 181 U. S. 155, 45 L. Ed. 794, 21 U. S. Sup. Ct. Rep. 544; Haddock v. Haddock, 201 U. S. 562, 50 L. Ed. 867, 26 U. S. Sup. Ct. Rep. 525, 5 Ann. Cas. 1. In the Atherton case the matrimonial domicile was in Kentucky, which was also the domicile of the husband. The wife left him there and returned to the home of her mother in the State of New York. He began suit in Kentucky for a divorce a vinculo matrimonii because of her abandonment, which was a cause of divorce by the laws of Kentucky, and took such proceedings to give her notice as the laws of that state required, which included mailing of notice to the post-office nearest her residence in New York. No response or appearance having been made by her, the Kentucky court proceeded to take evidence and grant to the husband an absolute decree of divorce. It was held that this decree was entitled to full faith and credit in the courts of New York. In the Haddock case, the husband and wife were domiciled in New York, and the husband left her there and, after some years, acquired a domicile in Connecticut, and obtained in that state, and in accordance with its laws, a judgment of divorce based upon constructive, and not actual, service of process on the wife, she having meanwhile retained her domicile in New York and having made no appearance in the action. The wife afterwards sued for divorce in New York and obtained personal service in that state upon the husband. The New York court refused to give credit to the Connecticut judgment, and this court held that there was no violation of the full faith and credit clause in the refusal, and this because there was not at any time a matrimonial domicile in the State of Connecticut, and, therefore, the res—the marriage status—was not within the sweep of the judicial power of that state." Thompson v. Thompson really depended upon the decision as to whether the divorce proceedings were regular, a question not raised in the present case. In this case the plaintiff contends that the defendant is not his wife; that she is the wife of Jones; although, prior to her marriage to the plaintiff, she had a divorce which had been legally granted to her in Illinois under a law that is precisely similar to the Pennsylvania statute of May 9, 1913, P. L. 191, and although she had been legally married in Illinois, the state which granted

the divorce. It is conceded that that marriage in Illinois was not bigamous, nor was it bigamous in Missouri: Anthony v. Rice, 110 Mo. 223. Notwithstanding the plain terms of our statute of 1913, which is like the Illinois statute, it is contended that, under the authorities, the Illinois marriage is bigamous in Pennsylvania. Can it be contended that if Mrs. Jones came into Pennsylvania and, after living here a year, had secured a divorce from Mr. Jones under our Act of 1913, and she and Mr. Ray had then married in Pennsylvania, her marriage would be void or even voidable? Would any Pennsylvania court set aside its decree of divorce if Jones appeared and admitted that the Act of 1913 had been complied with, but averred that he had no notice of the Pennsylvania divorce proceedings? Assuredly the divorce would not be set aside. Could it be pretended that if a criminal prosecution for bigamy had been commenced against Mrs. Ray, that any court in Pennsylvania would allow her to be convicted? If these positions are correct, does the fact that the divorce and the marriage were in Illinois make any difference in Pennsylvania?

Plaintiff's contention is that the Illinois decree is absolutely void in Pennsylvania because the cause of divorce, usually called the *res*, arose in Missouri and because Jones had no personal service in the Illinois case, and did not appear in that proceeding. He relies on the leading case of Colvin v. Reed, 55 Pa. 375, and the cases which have followed it. The syllabus of that case is: "Taylor, residing in Pennsylvania, conveyed to Colvin, his wife not joining in the deed; Colvin gave a bond for part of the purchase money payable when the wife's interest in the land should be discharged. Taylor became a citizen of Iowa, his wife still residing in Pennsylvania, procured a divorce in Iowa and died, his wife surviving him, she not having released her interest. *Held*, that there could be no recovery on the bond. In the question of jurisdiction there is no difference between the interstate and a foreign relation. The unity of person created by marriage is a legal fiction, to be followed for all useful and just purposes, but not to destroy the rights of either contrary to the principles of natural justice in proceedings which, from their nature, make them opposite parties. Mutual consent was required to establish the relation, and the husband and wife should be viewed in their separate natural condition, where one proceeds against the other to destroy the relation. As to a dissolution of marriage, each has a right to be heard as a natural person. The law of the place of the actual *bona fide* domicile of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local laws without reference to the law of the place of the original marriage. The law of domicile implies that it is the actual domicile of both parties or was when the offending party left it. Where the injured party seeks a new domicile and the domiciles are, therefore, actually different, there is no greater reason why the husband's new domicile should prevail over the wife's than hers over his. Neither should draw the other within a foreign jurisdiction. Nothing but the possession of the person of the wife before or at the time of the proceeding can warrant another state to subject her to its jurisdiction. By marriage, the wife residing in Pennsylvania has claims upon her husband's property here, and our laws have claims to apply it to her support as one of its married citizens. The husband had his remedy in Pennsylvania. In seeking a new domicile, he abandoned this right, and he cannot complain that he is deprived of the full effect of the decree of another state because he could not procure service upon his wife there." The opinion of Mr. Justice Agnew is a splendid discussion of the principles applicable to the facts of that case. They are, briefly, that the parties were married in 1857. The divorce decree was

Ray *v.* Ray.

entered in Iowa. Mrs. Taylor had always been a resident of Pennsylvania. The *res* took place in Pennsylvania. Those facts are entirely different from the facts in the present case. The court in that case relied upon a number of well-considered cases, one of which is Dorsey *v.* Dorsey, 7 Watts, 349. Mr. Chief Justice Gibson, in a well-considered opinion in that case, held that a wife, who was a resident of Pennsylvania at the time of marriage, who moved with her husband to Ohio, where her husband deserted her, when the wife returned to her original home in Pennsylvania—that, under such circumstances, she never could get a divorce. The substance of the decision was that where the *res* arose in another state, parties would have to go to that state to get a divorce. The same learned Justice wrote the opinion in M'Dermott's Appeal, 8 W. & S. 251. In that case, the desertion occurred in Ireland. The wife followed her husband to Pennsylvania. She commenced an action for divorce. Her husband demurred, setting out in his amended demurrer that the desertion occurred in Ireland. The lower court overruled the demurrer and granted the divorce and directed that alimony should be paid. The second assignment of error was, "The court had no jurisdiction, as the alleged cause of divorce occurred out of the State of Pennsylvania." The Supreme Court affirmed the lower court, entirely overlooking the question of jurisdiction, and put the decision on the ground that Pennsylvania was interested in the support of the wife. In Hollister *v.* Hollister, 6 Pa. 449, the husband and wife resided in Pennsylvania. They moved to Ohio. The wife then returned to Pennsylvania, but the husband remained in Ohio. She presented an application for divorce on the ground of cruel and barbarous treatment, which had taken place in Pennsylvania prior to the removal to Ohio. The Supreme Court said [page 451]: "Did, then, the removal of the traversee to the State of Ohio, and his residence there, since the autumn of 1841, oust the jurisdiction of the Pennsylvania courts? By the common law, the domicile of the wife follows that of her husband. Wherever his home is, there also is hers. In the nuptial contract she virtually says to him, 'thy country shall be my country, and thy home shall be mine.' This point was ruled in Greene *v.* Greene, 11 Pickering, 410. If, therefore, the domicile of Hollister was in the State of Ohio, which was but feebly contested, and seems fully established by the evidence, the libellant was not entitled to a divorce in the courts of this State, under the provision of the Act of March 13, 1815, the 11th section of which enacts that no person shall be entitled to a divorce from the bonds of matrimony who is not a citizen of this State, and who shall not have resided therein one full year before filing his or her petition. But the Act of April 18, 1843, P. L. 340, kindly comes to the aid of the libellant, and provides 'that the word *citizen*, used in the 11th section of the Act of 1815, shall not be construed to apply to any woman who shall have had a *bona fide* residence in this State at least one year previous to filing her petition.' The general policy of this last act is not for me to question. But whatever its operation may be in the main, its effect in the case before us is not only opportune but beneficent." Thus, the curative effect of an act of the legislature was held to apply. In Bishop *v.* Bishop, 30 Pa. 412, the syllabus is: "Our courts have no jurisdiction to decree a divorce on the ground of desertion where the marriage and alleged desertion took place in a foreign country and the defendant never was within the jurisdiction. The Act of April 26, 1850, P. L. 591, giving jurisdiction on the ground of desertion, where the parties at the time of the occurrence were domiciled *in any other state*, applies only to parties who were so domiciled in some other of the United States." That case shows that the courts recognize the difference that the Act of 1850 had

made in the law, but they construed the act very strictly, and held that a desertion in England was not to be considered within the terms of the act which applied only to the states of the Union. We have cited the above cases to show that the reasons which underlie well-considered cases like Dorsey v. Dorsey, supra, can be swept away by acts of the legislature. In 1850, by the Act of April 26, 1850, P. L. 591, the courts were given jurisdiction where the res arose in another state, when the ground of the application was desertion or adultery. By the Act of March 9, 1855, P. L. 68, the courts of this State were given jurisdiction where the res arose in another state and the ground of the application was personal abuse or such conduct as rendered the condition of the other party intolerable and life burdensome. By the Act of June 20, 1893, P. L. 471, the courts of this State were given jurisdiction where the res arose in a foreign country, and by the provisions of that act, where personal service could not be had, service could be made by publication. By the Act of April 28, 1903, P. L. 326, the courts of this State were given jurisdiction where the res arose either in a foreign country or in a state or territory of the United States. The grounds were extended by this act. By the Act of May 1, 1909, P. L. 374, the courts of this state were given jurisdiction where there was a conviction for an offense which took place either within or without the State. By the Act of April 13, 1911, P. L. 60, the courts of this State were given jurisdiction where the res took place out of the State, and it was extended to meet all the causes of divorce that we have in Pennsylvania. Finally, by the Act of May 9, 1913, P. L. 191, the legislature passed the following act: "The several Courts of Common Pleas shall have jurisdiction in any action in divorce, for any cause now or hereafter allowed by law, notwithstanding the fact that the marriage of the parties and the cause for divorce occurred outside of this Commonwealth, and that both parties were at the time of the occurrence of said cause domiciled without this Commonwealth, and that the respondent has been served with the subpœna only by publication as required by law." It will thus be seen that not only have we gotten away from the idea so strenuously insisted on in the early cases, that the res must be in this State and that the domicile of the respondent must be that of the wife, but the courts no longer insist on personal service. Let us look at the question of domicile: In one of the late cases, Hilyard v. Hilyard, 87 Pa. Superior Ct. 1, the syllabus is: "The divorce laws of Pennsylvania recognize that the husband and wife may have separate and distinct residences; that the residence of the husband does not determine that of the wife so as to govern her right to a divorce, and that a person who has acquired a bona fide residence in this State, and actually resides here for a year, may bring his or her action in divorce, though the offending spouse never resided within the Commonwealth and the cause of action arose out of it." In Reed v. Reed, 30 Pa. Superior Ct. 229, Judge Orlady said (page 236): "Our laws recognize the right of a wife to establish a domicile separate from that of her husband, when his conduct entitles her to have the marriage dissolved, and this without a judicial determination of the question. It is the only door open for her escape." In Starr v. Starr, 78 Pa. Superior Ct. 579, the court quoted with approval as follows: " 'In considering the legal relation of husband and wife, it is well to remember, however, that in recent times the law has undergone many changes. The trite saying that 'a husband and wife are one, and the husband is that one,' has to-day very little foundation in law and certainly less foundation in fact. By an almost generality of statutes throughout the states of the Union, the wife may contract, receive and convey property, sue and be sued, just as though unmar-

Ray v. Ray.

ried; she may, also, keep her earnings and sue for them in her own name. In some states she may even contract with her husband and prosecute actions against him. Aside from this, it is well settled that a wife has not only the actual, but also the legal, right to establish a separate domcile when ill-treated by her husband. The man is lord of the *domus* only so long as he rules lawfully. When the husband forfeits his right to preside over the home by reason of misconduct, then the wife acquires a legal right to have, and to maintain, a separate domicile. In other words, the husband's headship over the matrimonial domicile ceases when he violates the marriage laws, and the wife is no longer required to live with or accompany him—even in theory. Under such circumstances, the law of the domicile acquired by the wronged wife will determine her marital status. Of course, to acquire a separate domcile, the wife must intend to abandon her husband's home and set up an independent home of her own.'" There is, therefore, nothing in the Pennsylvania law that would subject Mrs. Ray to the slightest criticism for changing her domicile from Missouri to Illinois after her husband had deserted her. She had a perfect right to do so. It is contended, however, that, admitting that Mrs. Ray might have obtained a divorce in Pennsylvania, although her husband, Jones, had not personal service, yet, nevertheless, Colvin v. Reed, *supra*, must rule this case. That case was followed in Reel v. Elder, 62 Pa. 308. In that case the husband left Pennsylvania two weeks after he had married his wife in 1841. He went to Tennessee. He divorced his wife in 1849 in Tennessee. His wife never was out of the State of Pennsylvania and had no notice of the divorce proceedings. The husband owned real estate in Pennsylvania and died. It was held that his wife was entitled to dower and that the divorce was ineffectual as to her. In Fyock's Estate, 135 Pa. 522, the parties were married and lived in Pennsylvania. The husband moved to Nebraska and divorced his wife there without any personal service on her. Following Colvin v. Reed, it was held that that divorce did not prevent her administering on his estate. The same facts were present in Heins's Estate, 22 Pa. Superior Ct. 31. In Grossman's Estate, reported in 67 Pa. Superior Ct. 367, and affirmed by the Supreme Court in 263 Pa. 139, on Judge Henderson's opinion, the parties lived in Pennsylvania, where they were married. The husband went to Nevada and obtained a divorce without any service on his wife. Afterwards, he returned to Pennsylvania and married another woman. It was held that the second wife was not entitled to claim a widow's exemption; that the first wife would have had it if she had not agreed to articles of separation. In Duncan v. Duncan, 265 Pa. 464, the parties were married in this State. They moved to Buffalo, where the husband deserted his wife. The husband then returned to Pennsylvania and his wife also. Subsequently he went to Nevada and obtained a divorce. It was held that that divorce did not deprive his wife of the right to support under the Act of May 23, 1907, and its supplements. In Com. v. MacMaster, 88 Pa. Superior Ct. 37, the parties lived in Pennsylvania. The husband went to Mexico and obtained a divorce. He afterwards returned to Pennsylvania, and the wife commenced proceedings to compel support. The court held that the Mexico divorce was null and void. There may be other cases where Colvin v. Reed was followed, but in all the cases that have been cited to us, or that we have been able to find, where the doctrine of that case was applied, the facts were that the party against whom the foreign divorce was attempted to be used was a resident of Pennsylvania, except the case of Platt's Appeal, 80 Pa. 501. In that case the facts were as follows: The parties were residents of New York and were married there.

They moved to Ohio, where they separated. The husband came to Philadelphia. The wife went to Wisconsin. The husband went to Michigan and secured a divorce against his wife for the desertion which had occurred in Ohio. There was no personal service on the wife. The divorce was granted and the husband returned to Philadelphia and died there. The wife went to Michigan and commenced proceedings to set aside the divorce. Her husband's death occurred while those proceedings were pending. It also appeared that in Philadelphia he lived with another woman as his wife. The contest was between that woman and his first wife as to her $300 exemption and as to one-third of the estate. The auditor and the lower court were of opinion that the Michigan divorce was void. Mr. Justice Gordon said: "That the decree of the court in Michigan, divorcing Anson H. Platt from his wife, Mary W., was nugatory and void, so far, at least, as it affected the rights of parties in the State of Pennsylvania, is a proposition that is not open to doubt. The cause of divorce did not arise in the State of Michigan, neither did the parties reside therein. Mrs. Platt was not served with process, neither did she appear to answer the libel. Under these circumstances, we cannot recognize this decree of divorce as binding on the appellee: Colvin v. Reed, 55 Pa. 375; Reel v. Elder, 62 Pa. 308." That opinion was delivered on Feb. 14, 1876. We do not know what the law of Michigan was at that time with reference to the res, but Mr. Justice Gordon evidently thought that the fact that the res arose in Ohio was determining, and no effort seems to have been made to find out whether they had in Michigan the same kind of an act as the Act of April 26, 1850, supra. Again, the husband moved to Michigan in October, 1865. He lived there for two years. On Sept. 24, 1867, he started proceedings for a divorce, yet the learned Justice said "neither did the parties reside in Michigan." If the Michigan law were like our law, the husband having resided there more than one year, and his wife having deserted him, that divorce would have been perfectly valid. The husband then returned to Pennsylvania and lived here for three years, and lived with another woman, and had a son by her, and yet the first wife had never lived in Pennsylvania at all, and she was allowed to recover her one-third interest as a widow, but not her $300 widow's exemption. The bearing of article IV, section 1, of the Constitution of the United States upon the subject does not seem to have been brought to the attention of the court, and the decision was prior to most of the legislation quoted above; but it is said that the case was quoted with approval in Grossman's Estate, supra. It is true that Judge Henderson did mention that case, but it is manifest that he was merely citing it as one of a line of cases. He was not analyzing the case, and it had no bearing in its facts upon the Grossman case. If that case cannot be distinguished from the present case, the action of the trial court was erroneous, but we think that we have distinguished it and that it does not rule this case. We have referred to article IV, section 1, of the Constitution of the United States, "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." It is contended that the Illinois divorce cannot be pleaded in Pennsylvania because it is admitted that there was no personal service on Jones. That position was iterated and reiterated in the argument, and it was said that if Jones had been served, or if he had appeared, the Illinois divorce would have been all right. It only needs a reference to the case of Atherton v. Atherton, supra, to show that the question of service has nothing to do with the matter. In that case the service was by publication. The decree of divorce was entered, and the Supreme Court of the United States held that

Ray v. Ray.

it must be given full faith and credit in the courts of the United States. The basis of that decision was placed upon domicile. The underlying doctrine of domicile was fully discussed in the subsequent case of Andrews v. Andrews, 188 U. S. 15. In that case the statute of Massachusetts made valid a divorce in another state, but provided that if an inhabitant of Massachusetts went into another state for the purpose of obtaining a divorce for a cause not recognized by Massachusetts, the divorce would have no effect in Massachusetts. The husband went to South Dakota to get a divorce. His wife followed him and resisted the divorce, but the case was finally settled, and another suit was commenced and the wife entered an appearance to the second suit. The Supreme Court of the United States held that, notwithstanding the wife's appearance, the Dakota decree did not come under the protection of the article of the Constitution, supra, and permitted it to be shown that the conduct of the parties was a violation of a statute of Massachusetts. The whole opinion of the Chief Justice should be read, and it will appear that it is only when the foreign judgment has been rendered in accord with the laws of the state which are also in accord with and not opposed to the laws of the state in which it is to be used, that the protection afforded by the Constitution will be given to the foreign judgment. We think that the same position results from an examination of all the opinions in Haddock v. Haddock, supra. That certainly was the view of the Supreme Court of Texas in Montmorency v. Montmorency, 139 S. W. Repr. 1168. While, as individuals, we may differ as to the policy of our State in liberalizing divorce and in making it easy, yet, nevertheless, we have no right to set up our individual judgment with respect to this matter, whether that judgment is based on our religious views or on our views as citizens. In Kreusler v. McKees Rocks School District, 256 Pa. 281, the Supreme Court approved the following: "The only authentic admissible evidence of public policy of a state on any given subject is its constitution, laws and judicial decisions, and the public policy of a state of which courts take notice and to which they give effect must be decided from those sources. Where the state has spoken through its legislature, there is no room for speculation as to what the policy of the state is: 9 Cyc., 482."

The policy of this state has been clearly one of an enlarging and liberalizing tendency, culminating in the Act of 1913, supra, and there is no reason why the decree of divorce granted in Illinois should not have "full faith and credit" given to it in this State. Of course, we cannot, strictly speaking, by comity enforce a judgment of another state if it conflicts with the rights of our own citizens, but where there is an entire parity of the legislation in the two states, the doctrine of comity would seem to call for the same interpretation that has been put upon this statute both in Illinois and in Missouri. Again, the plaintiff in this case was married to the defendant after she had obtained her divorce in Illinois. The general rule of law is well understood. It is set forth in Schofield v. Schofield, 51 Pa. Superior Ct. 564. The syllabus of that case is as follows: "The validity of a marriage between persons sui juris is to be decided by the law of the place where it is celebrated. If valid there, it is valid everywhere. Exceptions to this rule are (1) where the marriage is incestuous; and (2) where a state by statute prohibits one of its subjects, or a class of such subjects, to contract matrimony, generally and in the abstract, employing in the statute language sufficiently indicating the intention to impose a personal incapacity to contract marriage either within or without the state, or by statute prohibits marriages between persons related in a certain degree expressly upon the ground that such marriages are con-

trary to God's laws. Marriage between first cousins has never been considered incestuous in Pennsylvania. . . . The act does not render the existence of the marriage relation, the status of marriage, between first cousins generally unlawful if the relation has its origin in a contract lawful when and where it was made. A marriage which was lawful in the State of Delaware in which it was celebrated is not rendered void for the reason that the parties, being first cousins and domiciled in Pennsylvania and knowing that the statute of Pennsylvania prohibited their being joined in marriage, left that state for the purpose of being married in the State of Delaware, and shortly after the ceremony returned to their Pennsylvania domicile and there continued to reside." That case must be read in connection with Stull's Estate, 183 Pa. 625, the syllabus of which is: "Where a husband, after being divorced in Pennsylvania from his wife on the ground of adultery with a woman domiciled in Pennsylvania, goes into a state whose laws do not forbid marriage with a paramour, and there marries his paramour, and immediately returns to Pennsylvania, where he and she live and cohabit together as man and wife until his death, she is not entitled to letters of administration if the first wife survives." Mr. Justice Green, in a very learned opinion, on page 630, said: "There is no question as to the general rule that a marriage which is valid by the law of the place where it is solemnized is valid everywhere. Of course, even this general rule has its exceptions where the particular marriage is contrary to good morals, or public policy, or to the positive statutes of the country where it is sought to be enforced. But where a man and woman, citizens of the same state and subject to an absolute statutory prohibition against entering into a marriage contract which is against good morals and contrary to public policy, leave their domicile and enter another for the express purpose of violating the law of their domicile in this respect, the case is highly exceptional and the great weight of authority is against the validity of such a marriage in the place of their domicile. There have been conflicting decisions upon the question, but very few of them sustain the validity of the relation where it has been assumed for an intended evasion of the law of the domicile and is contrary to good morals. The fact of such an intended evasion has been repeatedly recognized as the basis of invalidity when otherwise validity would have been declared." It will be perceived that in neither of the above cases is a marriage such as the present one spoken of as within the exception to the general rule. Even if the Illinois divorce were invalid, this marriage would not be intrinsically bigamous. It would only be constructively so, not in Illinois, but in Pennsylvania. In Illinois it would always be good. For the above reason, we think the action of the trial judge was correct. We think it follows from the above that by a change in the policy of Pennsylvania, as expressed in its legislation, it is no longer the law that the res must necessarily be in Pennsylvania, that the wife may change her domicile and acquire, for the purposes of divorce, a domicile separate from that of her husband, that personal service is no longer a requisite, that the marriage in Illinois, valid there, must be construed to be valid everywhere, and that the public policy of this State and comity require, under article IV, section 1, of the Constitution of the United States, that "full faith and credit" should be given to the Illinois divorce.

It is, however, said, under the authorities of Grossman's Estate, supra, and others, that the plaintiff cannot be estopped. It must be borne in mind that in Grossman's Estate, Grossman had died and his heirs were parties. His second wife was claiming the exemption as an individual, and the burden was on her to prove her claim. The doctrine of estoppel was sought to be invoked

as against the children by reason of the conduct of their father, which the court held could not be done. More in point are the following cases. In Miltimore v. Miltimore et al., 40 Pa. 151, the syllabus is: "A wife obtained a decree of divorce a. v. m. from her husband on the ground of adultery, having herself procured the issuing of the subpœna but twelve days before the ensuing term. After more than seven years, on the death of her husband, she endeavored to avoid the decree on the ground of irregularity and demanded dower in her husband's estate. Held, that she was estopped by her own acts and that the decree of the court having jurisdiction both of the cause of action and the parties was not void, but only voidable if taken in time by a party who had a right to object." In Baily v. Baily, 44 Pa. 274, the syllabus is: "The legal assertion of a right acquired by decree of a court of competent jurisdiction made in due course of law will estop or bar the party from all proceedings thereafter to invalidate the decree under which the asserted right has been claimed. Thus, where, after decree of divorce, the wife brought replevin against her former husband for certain articles of personal property claimed by her and recovered judgment for them by an award, from which there was no appeal, it was held that she was estopped by this assertion of her right from denying, on appeal, the validity of the decree of divorce." In Richardson's Estate, 132 Pa. 292, the syllabus is: "Where a decree of divorce absolute was entered in a foreign jurisdiction at the suit of the husband, and the wife subsequently married and never after made claim upon her first husband, who himself subsequently twice married without objection on her part, she is estopped from claiming as his widow on the distribution of his estate, although the decree of divorce might have been avoided at the proper time on her application." In McDonald's Estate, 268 Pa. 486, the syllabus is: "Where the return-day of a libel in divorce is fixed at too early a date, the mistake is merely an irregularity which does not render the decree void, but only voidable, at the instance of a party to the proceedings, if a proper and prompt application to open it is therein made. One not a party to the divorce cannot be heard in any proceeding to make objection to the decree upon this ground." Mr. Justice Simpson, on page 488, said: "It is admitted appellant had been previously married; had applied for and was granted a decree of divorce by the Court of Common Pleas more than five years before she married decedent; that all the proceedings in regard thereto were regular and unimpeachable, except, as is alleged, the court fixed too early a return-day for the original subpœna; that the decree of divorce stands unappealed from and unreversed, and the time within which an appeal could be taken has long since expired. In considering the issue raised, the court below held that, under the Act of April 22, 1905, P. L. 293, the return-day of the original subpœna should have been not less than thirty days after it was issued, and, as it was made returnable in a shorter period, this error of the Court of Common Pleas vitiated the entire proceeding, rendering the decree of divorce wholly void—though there was no averment or proof of fraud or collusion—and subjected it to collateral attack by appellee. To this conclusion we cannot agree." That is precisely the position in this case. It is a collateral attack by Ray on this divorce, and when the court found that he knew of the divorce, he is estopped in this proceeding to get his property back. Plaintiff has practically abandoned his claim that there was fraud. He seeks to have it set aside on the ground of a mistake of fact. The general rule of law is that ignorance or mistake of law, with full knowledge of the facts, is not ground for equitable relief: Norris v. Crowe, 206 Pa. 438. In that case, Mr. Justice Dean, on page 448, sets forth some of the exceptions. That case was followed in Lancaster v. Flowers, 208

Pa. 199; Clark v. Lehigh & Wilkes-Barre Coal Co., 250 Pa. 304, and Shields v. Hitchman, 251 Pa. 455. We think that doctrine applies to the present case. The plaintiff is bound to know the law just as much as the defendant. If this divorce was not good in Pennsylvania, he was bound to know it, and having declared in his bill that he transferred these properties with the idea that he was transferring them to his wife, he should be bound by his act. From all points of view, we are of opinion that the decision of the trial judge was correct.

And now, April 2, 1928, this cause came on to be heard at this term by the court in banc, and upon consideration thereof, it is ordered, adjudged and decreed that each and every one of the exceptions be dismissed and that the relief prayed for in the bill be denied, and that the bill of the complainant be dismissed, at the costs of the complainant.