## Radinovitz's Estate.

*Joseph R. Rose*, for exceptions; *Albert W. Sanson*, contra.

VAN DUSEN, J., Nov. 15, 1929.—Two women claimed distribution as widow of decedent, also seven persons as children by the first alleged marriage. All were of the Jewish faith, and the first claimant produced a certificate in the Aramaic language, and proved its English equivalent and the circumstances under which it was issued by one of the witnesses who signed it. It thereby appeared that decedent came with the first claimant before a rabbi at Yonkers, N. Y., where they lived, and declared that the original marriage certificate was lost and asked for a new one. Jewish custom, it was testified, demands that a certificate be always kept by the married pair. Thereupon the husband (not the wife) acknowledged that the woman had been married to him under the laws of Israel. This certificate is not the original act of marriage, and has probably no probative effect of itself. But supported by the testimony of one of the witnesses before whom the declaration was made, and dignified by the religious motive which caused it to be made, it is particularly impressive admission of the marriage by the decedent, and such an admission is evidence as against others who claim under him: Com. *v.* Gamble, 36 Pa. Superior Ct. 146; Greenawalt *v.* McEnelley, 85 Pa. 352; Drinkhouse's Estate, 151 Pa. 294.

Another admission is found in the divorce record offered by the second claimant, in which decedent declares that he was married to the first claimant.

Akin to an admission is the evidence of cohabitation and repute when decedent and the first claimant lived together in Yonkers as man and wife. This was testified by a man who knew them well, and who referred to seven mute witnesses in the seven children born to them. The sister of the claimant also testified that she was present at the original marriage ceremony; and while what she says is indirect in form ("I gave her away"), the substance of what she means is material. The finding that decedent was married to the first claimant is supported by ample evidence. This marriage was contracted in New York, and it is to be presumed, in the absence of proof, that the law of that state as to the validity of the marriage is the same as our own.

The second claimant then proved her marriage to decedent, and offered the record of a prior divorce from the first claimant. By this record it appears that decedent presented his petition to a court of Cuyahogo County, Ohio, and alleged that he had been a *bona fide* resident of that county for more than a year, and that his wife, the first claimant, in disregard of her marital obligations, had absented herself from him for a period continuing over ten years. He further alleged that his wife was not within the state, but was a resident of Yonkers, N. Y., and that he could not serve her except by publication. Thereupon service was had by publication, which was approved by

the court, and a default decree of divorce was entered. The Auditing Judge held that this decree was void on its face for lack of service on the respondent personally; and he awarded distribution to the first claimant and her seven children.

It is urged in an excellent brief that this decree must be given full faith and credit under the Constitution of the United States. This is not put on the ground of matrimonial domicile in Ohio (Atherton v. Atherton, 181 U. S. 155; Thompson v. Thompson, 226 U. S. 551), of which there is no assertion in the divorce record, but on the ground that a deserted spouse may establish a *bona fide* domicile in another state and draw the other party there by publication

Haddock v. Haddock, 201 U. S. 562, which is cited to support this argument, does not so decide. Whether such a corollary may be drawn from that case is a perplexing matter which we do not feel called upon to go into, for the Pennsylvania cases from an early day down to the present time have taken the general view that a state in which there has been no matrimonial domicile cannot draw the respondent into a divorce action by publication (Grossman's Estate (No. 1), 263 Pa. 139; Duncan v. Duncan, 265 Pa. 464, and Com. v. MacMaster, 88 Pa. Superior Ct. 37, following Colvin v. Reed, 55 Pa. 375; Reel v. Elder, 62 Pa. 308, and Platt's Appeal, 80 Pa. 501), and we cannot say with certainty that any Federal case conflicts with this view.

If there be such a doctrine, we would then have to consider whether the Ohio decree is *prima facie* proof of desertion, or whether it must be supported by proof at bar on the merits. If the latter, then the only proof is that the husband left the wife, which looks the other way.

Exceptant also argues that recent Pennsylvania statutes have changed our divorce policy to conform with that of Ohio, and, therefore, comity requires us to recognize the Ohio decree. The same Pennsylvania decisions, rendered since the enactment of these statutes, dispose also of the question of comity.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LAMORELLE, P. J., did not sit.